STATE of Missouri, Respondent,

v.

Kenneth James SCOTT, Appellant.

No. 60131.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Nov. 24, 1992.

**788**

Brad D. Baker, Columbia, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Chief Judge.

Defendant, Kenneth James Scott, appeals conviction of murder in the second degree pursuant to § 565.021 RSMo 1986, after being charged with murder in the first degree. We affirm.

On the night of September 16, 1987, the victim, Kathy Gilstrap, was given a ride from work to the Vocational Technical School in Macon, Missouri. She entered the building to meet her father-in-law. He was to give her a ride home.

Bill Gilstrap, her father-in-law, left class around 9:40 p.m. He was unable to find Kathy inside so he began to look outside. About 10:00 p.m., Sergeant Mark Miller of the Macon Sheriff's Department noticed lights in the school parking lot and proceeded to investigate. After discovering Kathy left her place of employment at approximately 9:00 p.m., two officers and Bill Gilstrap began searching the school. They found her purse in a common area, so they began searching classrooms.

Defendant, the janitor at the school, opened the locked doors in order for the classrooms to be searched. The search party located Kathy in the automotive shop laying on her stomach with her legs extended. Her shoulders and neck were suspended off the ground by a rope that was attached to a jack in the shop. Her arms were tied behind her back.

Further investigation revealed rope similar to that used on the victim in the janitor's closet in the Vo–Tech building. Additionally, the knots used were recognized by defendant's ex-wife as those frequently used by defendant.

The pathologist report revealed Kathy was killed as a result of compression of the neck and possibly manual strangulation. Defendant's former mother-in-law testified defendant had often stated he could strangle someone with his hands. She also verified defendant drove a car like the one seen at the school on the night of the murder.

In four points on appeal, defendant alleges: (1) statements made to police were not knowing and voluntary due to mental illness; (2) without defendant's statements the state failed to prove each element of the crime charged; (3) three jury instruction errors; and (4) error in defining reasonable doubt as firmly convinced.

In his first point on appeal, defendant alleges the trial court erred in overruling his motion to suppress statements he made after his arrest. He claims the statements should have been suppressed because he suffered from "major depression, recurrent, with mood congruent psychotic features." Defendant asserts the mental illness prevented him from making a knowing and intelligent waiver of his Miranda rights. We disagree.

This murder went unsolved for two years until defendant confessed to a minister who notified police. Two Macon County police officers then arrested defendant in Louisiana, Missouri, early in the morning on April 6, 1989. Before transporting defendant, he was advised of his Miranda rights but he was not questioned. In route, however, defendant made an unsolicited statement that he wanted to make things right with God.

Once in Macon, defendant was again read his rights and he signed a waiver. He then confessed to killing Kathy Gilstrap. The statement was recorded on video tape and defendant signed a written statement. Later that day, defendant confessed on video again to the Missouri Highway Patrol. That tape was shown to the jury at trial.

■ Defendant finds support for a claim that his confession was not knowing and intelligent in the testimony of two psychiatrists. Both doctors diagnosed defendant as "major depression recurrent." They also testified that, in their opinion, defendant was depressed at the time he made the confession. Defendant argues this illness made his confession incompetent.

The doctors, however, also stated defendant "understood that he was making a statement which could be used against him." In order to constitute a constitutionally permissible waiver, defendant must understand he could remain silent and that

choosing to waive his rights could result in statements being used against him. *State v. Powell*, 798 S.W.2d 709, 713 (Mo. banc 1990). All the requirements are met here.

■ The question of waiver is one of fact, and the trial court's findings of fact concerning waiver will not be overturned unless clearly erroneous. *Powell*, 798 S.W.2d at 713. In addition to the psychiatrists' testimony, the facts include observation by the officers accepting the confession that defendant appeared calm and understood what he was doing. They allowed him to stop and rest at one point before continuing, giving defendant additional time to reconsider his waiver. Miranda rights were administered more than once and each time defendant chose to speak. We find defendant did understand the consequences of his actions, yet chose to waive his rights. Therefore, the trial court's ruling allowing the statements to be used was not clearly erroneous.

Defendant also claims the trial court erred in not making specific findings of knowing and intelligent waiver as required by the Supreme Court in *State v. Bittick*, 806 S.W.2d 652 (Mo. banc 1991). We do not find *Bittick* controlling. It involved a trial court failing to address the issue of knowing and intelligent waiver. Therefore, a remand was necessary for such a determination. *Id.* at 658.

■ A judge need not make a particular formal finding. *State v. Schnick*, 819 S.W.2d 330, 336 (Mo. banc 1991). The only prerequisite is that the trial court's ruling be clear. *Id.* In the current case, the court did address the issue of knowing and intelligent waiver. A hearing was held on defendant's Motion to Suppress where the issue was whether defendant's confession was the product of a knowing and intelligent waiver of Miranda rights. The trial court took the matter under submission and then issued a ruling denying defendant's motion. Because there was only one issue before the court, the trial court's denial of the motion made clear that it found defendant's waiver knowing and intelligent.

In his next point, defendant contends that once defendant's statements are suppressed, the state failed to prove each element of the charge. This point is without merit because the trial court appropriately admitted defendant's statements.

■ Defendant's third point involves three allegations of jury instruction error. None of the contentions have merit. First, defendant contends the trial court erred in not administering MAI–CR3rd 306.04, a limiting instruction regarding expert testimony on mental responsibility. We agree error was committed. Under Notes on Use 3 and Rule 28.02(f), the court was required to submit this instruction to the jury, but did not. However, the same rule requires the court to determine prejudice in not submitting a required instruction.

In this case, we very carefully reviewed the testimony of both psychiatrists. The missing instruction would inform the jury not to consider defendant's statements to psychiatrists in determining guilt or innocence. There was no mention of facts surrounding the alleged criminal acts, either directly or in a manner in which the jury could draw inferences which would violate the defendant's rights against self incrimination. The testimony was limited, through constant objections by the prosecutor, to diagnosis of defendant's mental illness. The instruction was superfluous. Hence, defendant suffered no prejudice. Point denied.

Second, defendant contends the court erred in failing to submit instruction MAI–CR3rd 306.02, relating to the affirmative defense of mental disease or defect excluding responsibility, as the second instructional error. Defendant claims there was adequate evidence to support use of this instruction. We find the trial court correctly omitted this instruction.

■ Defendant must demonstrate two things in order for the defense of mental disease or defect to be available to him: (1) that he had a mental disease or defect; and (2) that as a result of the mental disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law. *State*

*v. Foerstel,* 674 S.W.2d 583, 591 (Mo.App. 1984).

■ Defendant called the psychiatrists to testify. They conclusively established that defendant suffers from depression, which is a condition under § 552.030. Prong two of the requirements, however, is expressly refuted by the psychiatrists who offer the only evidence regarding defendant's mental state. Both doctors state that defendant's bouts of depression did not prevent him from knowing the wrongfulness of his acts nor did it make him incapable of conforming his conduct to the requirements of law. Therefore, defendant's point fails.

■ The third claimed instruction error involves MAI–CR3rd 300.20. Defendant contends this limiting instruction was required because a part of the trial involved expert testimony regarding mental examinations pursuant to § 552.030 RSMo 1986.

Although this instruction is mandatory under the facts of this case, Notes on Use 5 clearly states it is the duty of counsel to remind the court to give it. The defendant in this case did not remind the court. "The want of reminder or request by counsel to the court—in view of the peremptory duty the Notes on Use impose—constitutes a waiver of any point that the oversight to instruct was error." *State v. Johnson,* 714 S.W.2d 752, 762 (Mo.App.1986). Point denied.

■ Finally, defendant contends MAI–CR3rd 302.04 defining reasonable doubt as firmly convinced does not meet the standard set in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). Our supreme court definitively ruled this instruction constitutional under the Supreme Court standards in *State v. Griffin,* 818 S.W.2d 278 (Mo. banc 1991). Point denied.

Judgment affirmed.

PUDLOWSKI and SIMON, JJ., concur.