**STATE of Missouri, Respondent,**

v.

**Raymond WILKINSON, Appellant.**

**Raymond WILKINSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 17563, 18445.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 18, 1993.

Application for Transfer Denied
Sept. 9, 1993.

Application to Transfer Denied
Oct. 26, 1993.

Henry B. Robertson, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David B. Cosgrove, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

The Defendant was found guilty by a jury of attempted robbery in the first degree, assault in the first degree, and two counts of armed criminal action. He was sentenced to four consecutive terms of fifteen years' imprisonment. Defendant appeals in case number 17563.

The Defendant sought postconviction relief under Rule 29.15.[1] The motion court dismissed the motion because it was untimely filed, and Defendant appeals in case number 18445.

The appeals are consolidated for our review. Rule 29.15(*l*). We affirm the judgments in each case.

### No. 17563

Defendant does not challenge the sufficiency of the evidence, but raises a single point urging his confession was the result of unlawful interrogation and was also involuntary. Before trial, Defendant filed a motion to suppress his statement which was overruled.

During October and November 1990 four armed robberies occurred at a rest stop area on Interstate 55 in Pemiscot County. The elderly victims described the perpetrator as a black man who drove a maroon sports car. On November 26, 1990, Deputy Sheriff Ivie saw a car of that description, which was registered to the Defendant, at the rest area.

On November 28, 1990, Doyle Wright, his wife and granddaughter stopped at the rest area for a nap in the early morning hours. Upon awakening, Mr. Wright went to the restroom. On his way he noticed a maroon sports car parked nearby. While in the restroom Mr. Wright was accosted by a black male who ordered him to give up his billfold. In response, Mr. Wright said, "You're not gonna get it," and reached for a trash can. At that time, the assailant fired his pistol and the bullet grazed Mr. Wright's upper lip. Mr. Wright then hurled the trash can at his assailant who fired a harmless second shot and ran from the restroom. Pursuing him, Mr. Wright saw the man enter the maroon sports car and speed away. Mr. Wright pursued in his vehicle for a short distance but soon abandoned the chase. At trial, Mr. Wright did not positively identify the Defendant as his assailant but said he matched the description of the person who assaulted him.

The rest area was under surveillance on December 1, 1990, by the Pemiscot County

1. Rule references are to Missouri Rules of Court (1993), unless otherwise indicated.

sheriff and his deputies. Early that day the Defendant's car was spotted in the rest area and was then followed by Deputy Ivie. After Defendant exited Interstate 55, he was arrested by Deputy Ivie who read him his Miranda rights on the spot. A search of Defendant's car uncovered a hand gun under the driver's seat. Defendant was transported to the sheriff's office, and again Deputy Ivie gave Defendant the Miranda warning.[2]

At the motion to suppress hearing Deputy Ivie was the only witness. He testified Defendant refused to sign a written waiver of his rights at the sheriff's office. However, Deputy Ivie stated he read Defendant his rights from a written form; Defendant then read the form and said he understood his rights.

Initially, Defendant denied any involvement in the rest area robberies. Then he stated he loaned his car to a man and woman from Blytheville, Arkansas, who committed the crimes. Finally, Defendant admitted he was responsible for all the robberies.

At 11:35 a.m. on December 1, 1990, Deputy Ivie wrote out the following statement which Defendant signed:

11–28–90. Coming from Blytheville around 7:00, northbound rest area, I went into the bathroom when I got to the rest area. The man came in a little later. I pulled the gun on him. I pulled the gun on him behind his back. The man turned around and hit me with a trash can. I was on the north side of the bathroom. I put the gun up to his head. He throwed up his hands and went to swingin'. I was pretty high on Cocaine. I went to running when he was swinging. The gun went off when the trash can hit me. The trash can hit me in the arms and chest. I was on the northbound rest area. I remember the gun going off when the man hit me with the trash can.

Prior to his confession Defendant requested permission to call his girlfriend, which was refused. Then Defendant asked, "Could I call my lawyer?" and Deputy Ivie replied, "Yes." Although Defendant did not do so,

Deputy Ivie testified he would have allowed the phone call and would have stopped the interrogation if requested by Defendant. The record reveals no evidence that Defendant requested the presence of his attorney while he was questioned or that Defendant requested termination of the interrogation.

At trial, Deputy Ivie read Defendant's statement to the jury and the writing was admitted into evidence. During cross-examination of the deputy, defense counsel offered Defendant's Exhibit B which was admitted without objection. Deputy Ivie testified Defendant requested him to prepare Exhibit B. It read:

9:39 a.m. 12–01–90. I will talk to P.A. Mike Hazel about your case. I will talk to him about how you gave statements and helped me with the cases of the robberies at the rest area on I–55.

### Invocation of Right to Counsel

Defendant claims he invoked his right to counsel by asking, "Could I call my lawyer," and at that time his interrogation should have terminated. Therefore, Defendant believes his confession was taken in violation of his right to counsel and due process of law.

One of the rules in *Miranda* requires "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1627. Elaborating on this rule in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court said:

[A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484–485, 101 S.Ct. at 1884–1885. In *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the holding in *Edwards* was refined. *Smith* held the first inquiry must be whether the accused actually

---

**2.** Defendant does not dispute that he was given the proper warning required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

invoked his right to counsel and, if so, the police may not then initiate further questioning. *Smith* principally held that once a sufficient request for counsel is made, the accused's subsequent declarations may not be received to show that the initial request for counsel was ambiguous. Clearly, when counsel is requested but not provided, subsequent statements of the accused must be suppressed. *State v. Pennington,* 687 S.W.2d 240, 243 (Mo.App.1985).

Does the question, "Could I call my lawyer?" equate to an accused's request for assistance of counsel in his dealings with the police? Certainly, as Defendant points out, some federal appellate courts have answered that question affirmatively. *See United States v. De La Jara,* 973 F.2d 746, 750 (9th Cir.1992) ("Can I call my lawyer?" or "I should call my lawyer."); *Robinson v. Borg,* 918 F.2d 1387, 1391 (9th Cir.1990) ("I have to get me a good lawyer, man. Can I make a phone call?" But, a scorching dissent of eleven pages took the majority to task.)

■ *De La Jara* and *Robinson* are not binding on us. *Futrell v. State,* 667 S.W.2d 404, 407 (Mo. banc 1984). We are constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. Mo.Const. art. V, § 2 (1945); *State v. Wilson,* 795 S.W.2d 590, 591 (Mo.App.1990).

We determine this issue is controlled by *State v. Reese,* 795 S.W.2d 69 (Mo. banc 1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1025, 112 L.Ed.2d 1106 (1991), where the Missouri Supreme Court said that *"Edwards* and *Smith* rights attach only if the defendant indicates a desire for the assistance of counsel in his dealings with the police." *Id.* 795 S.W.2d at 72.

In *Reese,* just before defendant's arrest, he had called a lawyer asking what could be done to keep the officers from harassing him. Shortly after his arrest, defendant asked officers whether he should hire an attorney and was told they could not advise him on this subject, but a lawyer would be furnished if he wanted one. Defendant replied, "Forget it." Defendant was fully advised of his Miranda rights and indicated a willingness to talk. That evening he was arraigned and advised of his right to counsel. Defendant said he probably could not afford an attorney and was told that a form for requesting appointed counsel was available at the jail. The next morning, the officers sought to interview him, again advised him of his Miranda rights, and offered to call an attorney for him. Defendant refused the offer. A deputy then told him it was necessary for him to have a lawyer at the preliminary hearing, and he was required to fill out a form to determine if he was financially eligible for the public defender's services. The defendant completed the form checking "Yes" next to the question, "Are you requesting that a public defender be provided as your lawyer?" Later that day defendant confessed.

Defendant's motion to suppress was denied by the trial court which found "the record is quite clear that defendant Reese did not feel a need for legal assistance during his questioning by the officers, and that he did not ask to deal with police only through counsel." *Id.* at 72. The Supreme Court held the trial court's finding was amply supported by the evidence and said, "Even though the defendant spoke to a lawyer and discussed the subject of obtaining a lawyer with the police, he was well aware of his rights and he expressly waived them. We find no violation of his fifth amendment right to counsel." *Id.* Further, the Court said, "The mere mention of counsel by the defendant is not sufficient to preclude further police questioning. There must be a request." *Id.* at 73 (footnote omitted).

■ As noted, the instant Defendant never requested a lawyer to assist him in his dealings with the police. He merely asked if he could call one. He was given that opportunity and, for reasons only known to him, declined to do so. The facts in *Reese* are much closer to a request for counsel than those before us. Therefore, the ruling by the trial court on the motion to suppress is supported by the evidence, and we agree with it.

### Promise of Leniency

Defendant alleges his confession should have been suppressed because it was induced

by a promise of leniency in the form of Deputy Ivie's statement (Defendant's Exhibit B) that he would report Defendant's cooperation to the prosecutor.

■ The test of voluntariness of a confession is whether, under the totality of the circumstances, defendant was deprived of the free choice to admit, deny, or refuse to answer questions and whether physical or psychological coercion was of such a degree that the defendant's will was overcome at the time he confessed. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). On appeal, the question is whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given. *State v. Alewine,* 474 S.W.2d 848, 852 (Mo.1971). The state's burden to show that a confession given while in custody was voluntary is met by a prima facie showing that defendant was informed of his rights, that he was capable of understanding those rights, and that no physical force, threats, promises, or coercive tactics were used to obtain the confession. *State v. Simpson,* 606 S.W.2d 514, 516–517 (Mo.App.1980).

Defendant suggests that *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), is the leading and seminal case on this issue. *Bram* held that a confession is involuntary if extracted by any sort of threats or violence, obtained by any direct or implied promises however slight, or by the exertion of any improper influence. *Id.* at 542–543, 18 S.Ct. at 186–187.

In *State v. Clements,* 789 S.W.2d 101 (Mo. App.1990), this Court squarely ruled on the identical issue before us. There, one of the interrogating officers told the defendant he would tell the prosecutor that he cooperated. Defendant claimed his confession was involuntary because the purpose of that statement was to induce him to talk.

In *Clements,* defendant also relied heavily on *Bram.* This Court thoroughly discussed *Bram* and its application in subsequent cases. That discussion is not necessary to repeat. This Court concluded, "A confession, otherwise voluntary, is not tainted merely because the interrogating officer informs the

suspect that if he gives a statement, the prosecutor or the court will be apprised that he cooperated." *Id.* 789 S.W.2d at 106.

■ We hold the trial court's determination that Defendant's statement was voluntary is supported by the record. Defendant was informed of his rights, understood those rights, and no force, threats, promises or coercive tactics were used to obtain his confession. Based on *Clements,* Defendant's otherwise voluntary statement was not tainted by Deputy Ivie's statement contained in Exhibit B. Point denied.

### No. 18445

■ Defendant alleges he was denied due process of law when the motion court erroneously dismissed his Rule 29.15 motion as out of time. He blames the untimely filing on his appellate counsel [3] who informed him that the transcript on his direct appeal was due August 14, 1993. According to Defendant, he was further advised his pro se Rule 29.15 motion was due on September 13, 1991. However, the transcript was filed on August 2, 1991, and Defendant claims he received no notice of this filing date. Defendant filed his Rule 29.15 motion on September 9, 1991.

Rule 29.15(b) provides, in part, "If an appeal of the judgment sought to be vacated, set aside or corrected was taken, the motion shall be filed within thirty days after the filing of the transcript in the appeal pursuant to Rule 30.04." Clearly, Defendant failed to timely file his motion and the motion court so found.

The Missouri Supreme Court has repeatedly held the time limitations of Rule 29.15 are valid and mandatory and place an increased responsibility on movant, his counsel and the courts to litigate claims promptly. *See Smith v. State,* 798 S.W.2d 152, 153 (Mo. banc 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2043, 114 L.Ed.2d 127 (1991); *Kilgore v. State,* 791 S.W.2d 393, 395 (Mo. banc 1990); *Antwine v. State,* 791 S.W.2d 403, 406 (Mo. banc 1990), *cert. denied,* 498 U.S. 1055, 111 S.Ct. 769, 112 L.Ed.2d 789 (1991).

**3.** The attorney who represented Defendant on his direct appeal is not the attorney on this appeal.

This Court has expressly ruled that due process rights are not denied to a movant requesting postconviction relief on the basis that Rule 24.035 makes no provision for late filing if good cause can be shown. *Estes v. State,* 793 S.W.2d 205, 206 (Mo.App.1990).

Appellate review is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). Review of the record does not show that the motion court was clearly erroneous in dismissing Defendant's motion.

The judgment in each case is affirmed.

PARRISH, C.J., and SHRUM, J., concur.