**STATE of Missouri, Respondent,**

v.

**James W. JOHNSON, Appellant.**

No. WD 54226

Missouri Court of Appeals,
Western District.

March 16, 1999.

Irene Karns, Asst. Public Defender, Columbia, for Appellant.

Philip M. Koppe, Kansas City, for Respondent.

SPINDEN, Judge.

James W. Johnson appeals the circuit court's judgment convicting him of statutory sodomy in the sexual assault of his six-year-old stepdaughter. He contends that the circuit court erred in overruling his motion to suppress his statements to police in which he admitted the crime. He gave the statements both before and after police informed him of his basic constitutional rights. We affirm the circuit court's judgment.

In July 1996, Johnson's six-year-old stepdaughter confided to her mother that Johnson had made her sodomize him. A St. Joseph police officer interviewed the child who told her that Johnson "had peed in her mouth and then made her take a drink afterwards." Johnson denied the accusations and agreed to take a polygraph test.

On September 4, 1996, Johnson went to police headquarters to take the polygraph examination. Harlan Wood, a police detective who performed polygraph examinations, led Johnson through security doors to the testing room. Wood was dressed in plain clothes and did not display a badge or a weapon. Wood testified that Johnson was not under arrest and was free to leave or to refuse to continue the examination at any time.

Before beginning the examination, Wood talked with Johnson about the allegations, a customary step in a polygraph examination. During this pretest conversation, Wood told Johnson that, after reviewing the police reports, he believed that Johnson was guilty. Johnson asked, "How do you know?" Wood explained and, when Johnson was about to respond, Wood leaned forward, placed has hands on top of Johnson's hands, and told Johnson that "it wasn't a big deal, that he didn't force her, he didn't threaten her, that you could tell by reading the report that it was consensual between the two of them."

Johnson admitted to Wood that, when he had unzipped his pants, the victim had gone "right down to his penis as [if] she had known what to do." At that point, Wood advised Johnson of his basic constitutional rights and asked no further questions. Johnson waived those rights, orally and in writing, and agreed to give a signed, written statement detailing the incident.

Wood did not place Johnson under arrest at that time but asked Johnson whether he would talk to another detective. Johnson agreed and accompanied Wood to another part of police headquarters where Johnson waited in an interview room for the other detective. Wood went to his desk to prepare documents. When the other police detective entered the interview room, he arrested Johnson.

In reviewing a circuit court's ruling on a motion to suppress evidence of a defendant's statements, we will affirm the decision if it is supported by substantial and compe-

tent evidence. *State v. Owsley*, 959 S.W.2d 789, 794 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 191, 142 L.Ed.2d 156 (1998). When a defendant raises the issue that his statement resulted from police coercion or was made without the benefit of warnings concerning his constitutional rights, the state must prove by a preponderance of the evidence that the statement was voluntary.*State v. Feltrop*, 803 S.W.2d 1, 12 (Mo. banc), cert. denied, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). The test for the "voluntariness" of a statement is whether, under the circumstances, officers deprived a defendant of the choice of admitting, denying, or refusing to answer. *Id.* This includes whether officers used physical or psychological coercion to such a degree that they overcame a defendant's will. *Id.* We view the evidence in a light most favorable to the circuit court's decision, and we defer to the circuit court's judgment concerning conflicts in the evidence and the credibility of witnesses. *State v. Simmons*, 944 S.W.2d 165, 173 (Mo.banc), cert. denied, —— U.S. ——, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997). That the record includes evidence which would support a contrary conclusion is immaterial. *Id.*

■ The Fifth Amendment to the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal trial to be a witness against himself[.]" Missouri's constitution provides a similar guarantee in Art. I, § 19. Warnings that a person has the right to remain silent, that, if he makes a statement, it may be used as evidence against him, and that he has a right to an attorney[1] are designed "to insure that the right against compulsory self-incrimination [is] protected." *State v. Bittick*, 806 S.W.2d 652, 657 (Mo. banc 1991) (quoting *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974)).

■ In the case of police interrogations, warnings concerning basic constitutional rights are necessary only when the interrogation is "in-custody." *Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). An "in-custody interrogation" occurs when officers interrogate a person whom they have in custody or have deprived of freedom in any significant way. *State v. Copeland*, 928 S.W.2d 828, 852 (Mo. banc 1996), *cert. denied,* 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997). A custodial interrogation occurs only when the police subject a suspect to formal arrest or "arrest-like constraints." *State v. Hicklin*, 969 S.W.2d 303, 310 (Mo.App.1998). We define an "arrest" as including circumstances which would cause a reasonable person to believe that he is not free to break off officers' interrogation and to leave. *Weldin v. State*, 973 S.W.2d 107, 112 (Mo.App.1998). An interrogation's occurring in police offices does not, in itself, render the interrogation "custodial." It certainly does not if the person voluntarily agrees to accompany officers to their offices for questioning or if he agrees to meet police there. *Id.; Feltrop*, 803 S.W.2d at 13.

■ Neither the Fifth Amendment nor Article I require police to warn a person of his basic constitutional rights before engaging the person in preliminary, investigative questioning unless the person is already in custody. *Hicklin*, 969 S.W.2d at 310. This is true even if police suspect that the person they are questioning is guilty or if the person has become the focus of officers' investigation. *Feltrop*, 803 S.W.2d at 13; *State v. Norton*, 904 S.W.2d 265, 271 (Mo.App. 1995).

■ Johnson acknowledges that the circuit court properly focused on whether Johnson was "in custody" when Wood engaged him in preliminary questioning before the polygraph test.[2] Johnson argues that the

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. In its findings of fact and conclusions of law, the circuit court said, "[Johnson] voluntarily appeared for a polygraph exam and talked to the polygraph examiner at which time he admitted sexually abusing [his stepdaughter]. . . . Johnson was not in custody at the time of his questioning

and was free to leave up to the time he was advised of his Miranda rights, waived them and gave his statement. The court finds that defendant's statement prior to being advised of his Miranda rights was noncustodial in nature and as a result the officer was not required to advise him of his rights."

circuit court erred by not considering whether "a reasonable man in [Johnson's] position [would] have perceived the situation as custodial." He contends that, because he thought the polygraph was required and that police would issue a warrant for his arrest if he did not agree to come voluntarily and because police led him through locked glass doors to reach the polygraph room, he perceived his situation to be custodial.

Johnson relies on *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), and *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), as support for his argument. These cases do not aid him.

In *Berkemer*, the United States Supreme Court considered whether statements made to a Highway Patrol officer by a person suspected of driving while intoxicated were admissible because the driver was not informed of his constitutional rights before he made incriminating statements. 468 U.S. at 423–24, 104 S.Ct. 3138. The defendant made incriminating statements after he failed a field sobriety test and after the officer arrested him and took him to jail. *Id.* The Supreme Court focused on whether the officer's conduct before eliciting the incriminating statement was "comparable to those [restraints] associated with formal arrest." *Id.* at 441, 104 S.Ct. 3138. The issue, the court said, was not whether the officer had decided to arrest the suspect before questioning him, but whether the circumstances surrounding the questioning, viewed from the perspective of "a reasonable man in the suspect's position," could be "fairly ... characterized as the functional equivalent of formal arrest." *Id.* at 442, 104 S.Ct. 3138. The court decided that statements made by a defendant in response to officers' roadside questioning did not require warnings of constitutional rights because of the brevity of the questioning and the public setting, *Id.* at 436–37, 104 S.Ct. 3138 even if a traffic stop "curtails the 'freedom of action' of the driver and the passengers," and even though most motorists would not feel free to drive away from a traffic stop without the officer's permission. *Id.* at 436, 104 S.Ct. 3138.

Similarly, in *Stansbury*, the United States Supreme Court addressed the question of whether a person was "in custody" when an officer believed that the person being interviewed was a suspect. 511 U.S. at 319, 114 S.Ct. 1526. The court held that "an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave." *Id.* at 325, 114 S.Ct. 1526. Although Johnson argues that *Stansbury* stands for the proposition that "custody" should be determined solely from the perception of the individual being questioned, the United States Supreme Court clearly affirmed that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* at 323, 114 S.Ct. 1526.

Johnson acknowledges that he appeared at police headquarters for the polygraph examination voluntarily. Wood testified that Johnson was not under arrest and that he was free to terminate the interview and to leave without answering any questions. Johnson admitted that the first time he believed that he was under arrest was when a second police detective formally arrested him. Although Johnson now argues on appeal that the polygraph room's being behind a security door and the officer's laying his hands on Johnson's hands compelled his statement, substantial evidence supported the circuit court's determination that Johnson was not "in custody" when he first admitted to sexually abusing his stepdaughter. The circuit court did not err in denying Johnson's motion to suppress his oral statement to Wood.

 Johnson also argues that the circuit court erred in determining that he voluntarily and knowingly waived his constitutional rights. Johnson contends that Wood used "psychological subterfuge" by minimizing the

situation when he told Johnson that "this is no big deal."

▰ When courts consider a challenge to a confession's voluntariness, they should "'indulge every reasonable presumption against waiver' of fundamental constitutional rights." *State v. Bucklew,* 973 S.W.2d 83, 90 (Mo. banc 1998), *cert. denied,* — U.S. —, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999)(quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461(1938)). "A waiver is an intentional relinquishment or abandonment of a known right or privilege," and "[t]he determination of whether a waiver is knowing and intelligent depends on the facts and circumstances surrounding that case and review is based on the totality of the circumstances, taking into account the background, experience and conduct of the accused." *Id.* The state's showing that a "defendant was informed of his rights, that he was capable of understanding those rights, and that no physical force, threats, promises, or coercive tactics were used to obtain the confession, " is *prima facie* evidence that the confession given while the defendant was in custody was voluntary. *State v. Wilkinson,* 861 S.W.2d 746, 750 (Mo.App.1993).

The record does not support Johnson's contention that his written confession was involuntary. Wood testified at the suppression hearing and at trial that he used a written form which delineated each of the constitutional rights set out in *Miranda* as necessary to inform Johnson adequately of his basic constitutional rights. He asked Johnson to read the form back to him and asked him whether he understood what each statement meant. Wood added that he asked Johnson such questions as, "Do you have to talk to me," and Johnson responded with answers indicating that he understood his basic constitutional rights. Johnson also told Wood that he did not want an attorney· and agreed to give a written statement. Wood wrote down the details of Johnson's story, and Johnson signed and dated the statement.

▰ Although Johnson argues that Wood's statements "minimized the practical consequences and moral gravity of the offense," Johnson does not argue that Wood made any promises of leniency to elicit Johnson's confession or waiver of his constitutional rights.[3] Moreover, Wood's conduct occurred before his oral confession and not after the giving of the Miranda warnings.[4] "If one is informed of his right to remain silent under *Miranda,* and understands his right to remain silent under *Miranda,* and thereafter makes voluntary statements, it is absurd to say that such person has not made a knowing and intelligent waiver of his right to remain silent." *State v. Skillicorn,* 944 S.W.2d 877, 890–91 (Mo. banc),*cert. denied,* — U.S. —, 118 S.Ct. 568, 139 L.Ed.2d 407, (1997). The record is void of any evidence that police used any threats or promises, physical force of improper coercion to obtain Johnson's confession or the waiver of his constitutional rights. We therefore, deny Johnson's point.

We, therefore, affirm the circuit court's judgment.

EDWIN H. SMITH, Judge, and ALBERT A. REIDERER, Judge, concur.

---

3. A confession elicited by police in reliance on an express or implied promise of leniency is inadmissible. *State v. Schnick,* 819 S.W.2d 330, 336 (Mo. banc 1991).

4. Johnson makes a fleeting reference in his argument that his "second, written statement was merely a continuation of the first, verbal admission, and was a product of the overbearing of [his] will by [the polygraph officer's] bogus reassurances that the offense was 'no big deal.' " He does not support this proposition with any citations of law, and therefore, we do not consider this point.