**STATE of Missouri, Plaintiff–Respondent,**

v.

**Ronald Joe NUNNERY, Defendant–Appellant.**

**No. 25502.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 20, 2004.

---

William J. Swift, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Edgington, Assistant Attorney General, Jefferson City, for respondent.

JAMES K. PREWITT, Judge.

Following a bench trial, Ronald Joe Nunnery ("Appellant") was convicted of first degree murder (§ 565.020.1, RSMo 2000) and armed criminal action (§ 571.015, RSMo 2000) for the shooting death of his wife, Marcia Nunnery. Appellant waived his right to a trial by jury in exchange for the State's agreement not to seek the death penalty. On the charge of murder in the first degree, the trial court found that Appellant had acted with deliberation and sentenced Appellant to life imprisonment without the possibility of parole. Under the charge of armed criminal action, Appellant received a sentence of fifty years' imprisonment, to be served consecutive to the sentence he received for the first-degree-murder conviction. This appeal followed.

Appellant does not challenge the sufficiency of the evidence upon which he was convicted. Viewed in the light most favorable to the judgment, the following evidence was adduced.

On or about August 28, 2000, Appellant shot and killed his wife, Marcia Nunnery, outside of their home in Wayne County. Also present at the time of the shooting was Eunnona Starkey Nunnery. Appellant, Marcia and Eunnona had lived together with Appellant's and Marcia's children since some time in 1999, when Appellant and Eunnona participated in a marriage ceremony in Las Vegas, Nevada. Marcia was a witness to the ceremony and apparently consented to the arrangement. However, there was discord among the three adults, as Eunnona testified that Marcia set the rules for the family to follow and was difficult to get along with.

Following the shooting, Appellant and Eunnona hid Marcia's body in a freezer located in an outbuilding on their property. Eunnona cleaned up the blood on the sidewalk where Marcia had fallen after the shooting. When Eunnona returned from work later that day, she discovered blood leaking out of the freezer's drain. The following day, Appellant and Eunnona drove to Poplar Bluff where they rented a backhoe which Appellant operated to dig a hole and bury Marcia's body on his property.

Marcia had been the recipient of disability benefit checks from Social Security. For approximately sixteen months following Marcia's death, Appellant and Eunnona cashed the benefit checks, forging Marcia's signature. They told various stories to explain Marcia's disappearance; one being that Marcia had run off with a truck driver; and another, that Marcia had cancer. They told the children that Marcia had just decided to leave.

In October, 2000, a request from the Williamsville city marshal led the Missouri State Highway Patrol to join an investigation, along with the Wayne County Sheriff's Department, involving the disappearance of Marcia Nunnery. Some time later, the Office of the Inspector General of the Social Security Administration joined the

investigation, after being contacted by the Division of Family Services to investigate possible fraud in connection with the cashing of Marcia Nunnery's disability benefit checks.

Following certain failed attempts to interview Appellant and Eunnona, Appellant was arrested on December 6, 2001. Initially, he was charged with sixteen counts of forgery. Appellant told officers that he had cashed Marcia's checks but had turned the cash over to Marcia, who would contact him to make arrangements to receive the money. After further questioning, Appellant admitted that he had killed Marcia and buried her body. Appellant consented to the videotaping of his statement and signed a "Consent to Search" form, after which law enforcement personnel conducted a search of Appellant's home and property. Under Appellant's direction, they recovered Marcia's body. A subsequent autopsy revealed an injury to Marcia's skull and a fractured ankle.

Following a change of venue from Wayne County to Dent County, Appellant's trial was held on January 6, 2003. Prior to trial, defense counsel moved to proceed "pursuant to an oral motion to suppress the statements of defendant" and a stipulation "asking that our federalization be included within our objections." The trial court took counsel's motion with the case. Appellant's motion to suppress was denied at the close of the case.

Appellant's first point relied on is set forth below:

The trial court clearly erred when it denied the motion to suppress statements and overruled counsel's objections to admitting statements [Appellant] made to all law enforcement because [Appellant] was denied his rights to due process and to not incriminate himself and his *Miranda* rights, U.S. Const. Amends. V and XIV and Mo. Const.

Art. I, Sections 10 and 19, in that those statements were obtained through the police representing to [Appellant] that he was in custody to be interrogated about only sixteen forgery counts and he was not told as part of the *Miranda* warnings given that he was also going to be interrogated as a murder suspect in Marcia Nunnery's disappearance even though the police considered him a murder suspect. Therefore, [Appellant's] waiver of rights was not freely, knowingly, intelligently, and voluntarily made, but was the product of coercion and obtained in violation of *Miranda*.

■ Whether a defendant's constitutional rights were violated is a question of law reviewed *de novo*. *State v. Hamilton*, 8 S.W.3d 132, 135 (Mo.App.1999).

■ *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), mandates that those in custody or subject to interrogation be properly advised of their constitutional guarantees of due process and protection against self-incrimination, including one's right to remain silent and one's right to the presence of an attorney. However, a suspect may waive his or her Fifth Amendment privilege, "provided the waiver is made voluntarily, knowingly and intelligently." *Id.*

■ To meet the standards imposed by *Miranda*, the State must "demonstrate that the defendant knowingly and intelligently waived his [or her] privilege against self-incrimination and his [or her] right to retained or appointed counsel." *Id.* at 384 U.S. at 475, 86 S.Ct. at 1628. *Miranda* also places on the State the burden to demonstrate by a preponderance of the evidence that the statement from the accused was made voluntarily. *State v. Williams*, 956 S.W.2d 942, 948 (Mo.App. 1997).

A waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege." *State v. Bucklew,* 973 S.W.2d 83, 90 (Mo.banc 1998), *cert. denied,* 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999). The question of waiver is one of fact. *State v. Scott,* 841 S.W.2d 787, 789 (Mo.App.1992). Here, the State bears the burden of proving, by a preponderance of the evidence, that the accused properly waived his rights. *State v. Banks,* 922 S.W.2d 32, 39 (Mo.App.1996).

"[W]hether a waiver is knowing and intelligent depends on the facts and circumstances surrounding that case[,] and review is based on the totality of the circumstances, taking into account the background, experience and conduct of the accused." *Bucklew,* 973 S.W.2d at 90. "[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against" a suspect. *Miranda,* at 384 U.S. at 479, 86 S.Ct. at 1630.

"The requirement that a waiver of rights be knowing and intelligent does not mean that a defendant must know and understand all of the possible consequences of the waiver." *State v. Powell,* 798 S.W.2d 709, 713 (Mo.banc 1990). "Rather, it requires that the defendant understood the warnings themselves;" that defendant at all times knew that he or she could stand silent, could request that an attorney be present during interrogation, and that the State could and would use any statement to obtain a conviction. *Id.*

In considering a challenge to the voluntariness of a confession, this court should "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Bucklew,* 973 S.W.2d at 90. "Voluntariness depends on the absence of coercive police activity."

*Williams,* 956 S.W.2d at 948. "The test for voluntariness is whether under the totality of the circumstances the defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that the defendant's will was overborne at the time of the confession." *Id.*

Here, Appellant asserts that his waiver "was the product of coercion[,]" in that law enforcement initially represented to him that he was to be interrogated regarding sixteen counts of forgery, but was, in addition, interrogated as a murder suspect in his wife's disappearance.

A trial court's ruling on a motion to suppress will not be reversed if supported by substantial evidence. *State v. Gilbert,* 103 S.W.3d 743, 750 (Mo.banc 2003). On review, the facts and any reasonable inferences arising therefrom are viewed in a light most favorable to the trial court's ruling. *State v. Davis,* 32 S.W.3d 603, 610 (Mo.App.2000). Conflicts in the evidence and the credibility of witnesses are matters for the trial court to resolve. *Banks,* 922 S.W.2d at 39. The State must show, by a preponderance of the evidence, that a defendant's motion to suppress should be overruled. *State v. Meinhardt,* 900 S.W.2d 242, 244 (Mo.App.1995).

Appellant did not testify, nor did he call any witnesses. The State called Eunnona Nunnery and law enforcement personnel who were involved in the arrest and subsequent search of Appellant's property. Admitted over Appellant's objections, were two "Notification and Waiver of Rights" forms and a "Consent to Search" form, all signed by Appellant, and a videotape of Appellant's statement.

Deputy Sheriff Bobby Burch, who assisted the Division of Drugs and Crime in the arrest of Appellant on forgery charges,

was the booking officer in Appellant's case. Deputy Burch stated he had been assigned to investigate the forgery case against Appellant, and that he had not been involved in the missing-person investigation. He informed Appellant that he was under arrest on sixteen counts of forgery. Burch testified that around 7:30 p.m., he read the Miranda warnings to Appellant and advised Appellant that an investigator would be in to talk with him. Appellant signed a "Notification and Waiver of Rights" form at 7:32 p.m., which Burch witnessed. Burch stated that Appellant did not ask for an attorney to be present and there was no indication from Appellant that he wanted the interrogation to cease.

Sergeant Terry Mills of the Missouri State Highway Patrol met with Appellant around 8:15 p.m. Deputy Burch had already advised Sergeant Mills that Appellant had been "mirandized." When Sergeant Mills asked Appellant if he knew with what he had been charged, Appellant responded, "forgery and bad checks." It was during Sergeant Mills' interrogation that Appellant admitted he had killed his wife. Sergeant Mills requested that Appellant consent to the videotaping of his statement, to which Appellant agreed. Sergeant Mills re-advised Appellant of his rights under *Miranda,* and Appellant signed another waiver at 10:35 p.m. Mills testified that Appellant never indicated that he wanted an attorney or that he wanted to end the interrogation.

Also present during Sergeant Mills' interrogation was Special Agent Diane Stowe with the Office of the Inspector General under the Social Security Administration. She witnessed Appellant's execution of the second waiver form and a "Consent to Search" form. She testified that there were no promises, threats or coercion, and that when he was advised of his rights, Appellant indicated he under-

stood and did not appear to be under the influence of any mind-altering substances at the time.

Corporal Charles Colbert, with the Missouri State Highway Patrol, had been called in to transport Appellant for the search of his home and property. Corporal Colbert handcuffed Appellant and was informed that Appellant "had been mirandized." He testified that he never asked Appellant a question on the drive to Appellant's farm.

At the farm, Appellant directed investigators to the location where he believed Marcia was buried. A search of the home revealed 30.30 shells, but no weapon. Corporal Colbert testified he also recovered pawn tickets for a weapon and three rings. Upon a subsequent inquiry at the pawn shop, a 30.30 Winchester rifle that Appellant had pawned in February, 2001, was recovered, along with three rings Appellant pawned in September, 2000.

Upon leaving the farm to return Appellant to Wayne County, Appellant asked if Corporal Colbert "wanted to know what happened." Colbert replied, "[I]f you want to that's okay with me." In response, Appellant pointed out the location on a sidewalk where he had shot Marcia and told Colbert that he had tied a rope around her and dragged her to the freezer using an ATV. He showed Colbert the freezer in which he had initially placed Marcia's body and identified a damaged 2 × 6 in an outbuilding that had cracked under the weight when Appellant winched Marcia's body up to place it in the freezer.

Sergeant Don Windham testified that he had been present at the farm to assist in the search for and excavation of Marcia Nunnery's body. Absent any objection from defense counsel, Sergeant Windham stated that Appellant had been "showing us around the area," and pointed out where he had hoisted the body up into the

freezer and where Appellant had buried Marcia's body.

■ "The state's showing that a 'defendant was informed of his rights, that he was capable of understanding those rights, and that no physical force, threats, promises or coercive tactics were used to obtain the confession,' is *prima facie* evidence that the confession given while the defendant was in custody was voluntary.'" *State v. Johnson*, 988 S.W.2d 115, 120 (Mo. App.1999) (quoting *State v. Wilkinson*, 861 S.W.2d 746, 750 (Mo.App.1993)). "After the state has made a prima facie case, the defendant must produce evidence showing any 'special circumstance' that may have rendered the confession involuntary." *State v. Day*, 970 S.W.2d 406, 409 (Mo. App.1998). Appellant presented no such evidence. We find that the State met its burden.

■ Further detrimental to Appellant's position, a waiver of rights under *Miranda* is not offense-specific.

The *Miranda* right to counsel during custodial interrogation was supplemented by the guarantee established in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation regarding *any* offense until counsel has been made available to him, which means that counsel must be present.

*Meinhardt*, 900 S.W.2d at 246 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). Therefore, waiver under *Edwards* is not offense-specific. *See McNeil*, 501 U.S. at 177, 111 S.Ct. at 2208; *Arizona v. Roberson*, 486 U.S. 675, 675–76, 108 S.Ct. 2093, 2095, 100 L.Ed.2d 704 (1988); *State v. Farris*, 125 S.W.3d 365, 368 (Mo.App. W.D. 2004); *Landrum v. Arkansas*, 326

Ark. 994, 936 S.W.2d 505, 508 (1996). *See also State v. Blackman*, 875 S.W.2d 122, 137 (Mo.App.1994) ("*Edwards* applies not only to continued questioning in the context of the same investigation but also to questioning in an independent investigation or on other charges.") Point I is denied.

Appellant's second point states:

The trial court clearly erred in only indicating it was denying the motion to suppress the interrogation statements made to Officers Mills and Stowe because that ruling denied [Appellant] his rights to due process, to not incriminate himself, and his *Miranda* rights, U.S. Const. Amends. V and XIV and Mo. Const. Art. I Sections 10 and 19, in that the court failed to also make a ruling on the separate interrogation statements [Appellant] made to Officer Colbert.

Here, Appellant contends that *State v. Bittick*, 806 S.W.2d 652 (Mo.banc 1991), requires that the trial court in this case "rule on whether the separate statements made to Colbert should have been suppressed." *Bittick* does not control here, however, as it involved the failure of a trial court to address the issue of knowing and intelligent waiver, thereby necessitating remand for that determination. *See Scott*, 841 S.W.2d at 789.

■ The trial court's findings of fact are reviewed under a clearly erroneous standard. *State v. Hamilton*, 8 S.W.3d 132, 135 (Mo.App.1999). Findings concerning waiver will not be overturned unless clearly erroneous. *Scott*, 841 S.W.2d at 789. When reviewing a trial court's ruling on a motion to suppress, the appellate court considers the record made and the evidence introduced at trial. *State v. West*, 58 S.W.3d 563, 567 (Mo.App.2001).

Appellant's oral motion to suppress consists of the following excerpts taken from the transcript:

> We will, however, not be waiving any objection to the admission into evidence of those video-taped statements or any other statements made by our client. And actually, we're seeking to proceed today in this trial before the Court pursuant to an oral motion to suppress the statements of defendant.
>
> . . . .
>
> What we're asking in this motion, Judge, is we're asking the Court to agree that we are preserving the record when we make objections, without having to go through all the federalization, the federal protections and the federal guaranty. That's the stipulation, that we're asking that our federalization be included within our objections.
>
> . . . .
>
> And then finally, Judge, I'd ask that we proceed pursuant to an oral motion to suppress the statements of our client.

The trial court then indicated that Appellant's oral motion would be taken with the case.

 Appellant cannot now complain regarding the trial court's ruling on the oral motion to suppress. "[I]t is the responsibility of the appellant to make known to the trial court his objections to the admissibility of evidence and whether it has been obtained in violation of guarantees afforded him by the Constitution of the United States or of the State of Missouri, or the decisional law of the Federal or State courts. In doing so he must state specifically the grounds for his objection." *State v. Redd,* 550 S.W.2d 604, 608 (Mo. App.1977).

We find the trial court's ruling on Appellant's motion to suppress in two locations in the record before this Court. Appellant refers us only to the trial court's statement contained in the transcript, set out below:

> [T]he Court finds that the statements that the defendant made in the presence of Sgt. Terry Mills and Agent Diane Stowe were made freely, voluntarily and intelligently after a full and knowing waiver of his rights after being advised of same in accordance with Miranda. Court further finds that the consent to search which was executed before said witnesses was made freely and voluntarily and that the objects and items which were retrieved from the residence and the ensuing search of the residence was made freely and voluntarily by the defendant as to his knowing consent therein. Accordingly, the Motion to Suppress Statements and the evidence seized in accordance with same and statements made in accordance with same is overruled and denied.

However, a docket entry January 6, 2003, references the trial court's ruling on Appellant's motion to suppress. The docket entry reads:

> The Court then took up the Dft's oral motions to suppress statements and evidence. The Court finds as a matter of law that the statements to Sgt. Mills of the Highway Patrol and Agent Stowe were made freely and voluntarily and intelligently by the Dft and not in contravention to his rights of the Missouri or U.S. Constitution or the laws of this state. The Court thereby finding that Dft was fully advised of his rights in advance of the statements he made and the time period between said waiver of his rights and the ensuing statements was not such that Dft needed to be readvised of his rights and in fact the Dft was on at least three occasions advised of his rights in accordance with Miranda. Under all the attendant circumstances the Court finds said state-

ments made by the Dft and his consent to search to be made freely and voluntarily given and not under any threat or coercion or promise of lenancy [sic]. Accordingly, the Motion to Suppress Statement and Evidence is overruled and denied.

When ruling on a motion to suppress, there are no particular formal findings required. *State v. Schnick*, 819 S.W.2d 330, 336 (Mo.banc 1991). "The trial court must make a determination of admissibility, often referred to as voluntariness, including, or based upon an expressed or clearly implied finding in respect to the issues." *State v. Harris*, 670 S.W.2d 526, 529 (Mo.App.1984).

That the trial court found Appellant's statements to have been made voluntarily is clear from the record before us. Point II is denied.

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.