**STATE of Missouri, Plaintiff–Respondent,**

v.

**Terry Wayne RUFF, Defendant–Appellant.**

No. SD 31167.

Missouri Court of Appeals, Southern District, Division One.

Jan. 19, 2012.

Motion for Rehearing and/or Transfer Denied
Feb. 7, 2012.

Application for Transfer Denied
April 3, 2012.

John M. Simpson, Special Public Defender, Kansas City, MO, for Appellant.

Janette Bleau, Assistant Prosecuting Attorney, Ozark, MO, for Respondent.

GARY W. LYNCH, Judge.

Terry Wayne Ruff ("Defendant") appeals his conviction of second-degree child

molestation, *see* section 566.068.[1] Defendant contends that his videotaped confession should not have been admitted into evidence because it was the result of an unlawful seizure and because the waiver of his *Miranda*[2] rights was not voluntary, knowing, and intelligent. Finding that Defendant's first claim was not properly preserved for appeal and that his second claim has no merit, we affirm.

### Factual and Procedural Background

Taken in the light most favorable to the verdict, *State v. Perdue*, 317 S.W.3d 645, 650 (Mo.App.2010), the following was adduced at trial.

In August 2008, J.E. began her freshman year in high school. She was fourteen years old. Shortly after beginning the school year, J.E. met Defendant, a junior in the same school. J.E. began dating Defendant at the end of October 2008, just after Defendant's seventeenth birthday.

Defendant and J.E. began a sexual relationship in January or February 2009. They had sex in J.E.'s house, a shed, and a cemetery, all of which were inside the Ozark city limits. Defendant would occasionally spend the night at J.E.'s house; he would sneak in through her bedroom window to prevent J.E.'s stepfather—who did not approve of Defendant—from finding out, although J.E.'s mother was aware that he sometimes spent the night.

Defendant and J.E. often discussed their sexual relationship, as well as their ages. They knew that having sex with each other was illegal because of J.E.'s age, and they kept their relationship a secret "[s]o [Defendant] wouldn't get caught and get in trouble." J.E. learned that her physical relationship with Defendant was illegal

from her mother. Nevertheless, they continued to be involved sexually because they "were in love." The couple maintained an on-again, off-again relationship for approximately eight months, breaking up "[f]our or five times."

In April or May 2009, J.E. discovered she was pregnant and went to a doctor. She informed the doctor that Defendant was the father. J.E. believed her doctor informed the police.

Sometime in June 2009, Detective David Southard of the Ozark Police Department received a hotline call from the Missouri Department of Social Services regarding Defendant's sexual relationship with J.E. Detective Southard did not immediately begin an investigation, but on July 20, 2009, he overhead Defendant's name over the police radio as another officer was checking for warrants in Defendant's name. Detective Southard made contact with the other officer and asked him to bring Defendant to the police station because he was a suspect in a case and Detective Southard "needed to talk to him." Because the other officer was with a K–9 unit and could not transport Defendant, he contacted a third officer, who brought Defendant to the police station; this officer was uniformed, and Defendant was transported in a marked patrol car.

Upon reaching the police station, Defendant was taken to an interview room, where he waited alone for a few minutes. Detective Southard entered the room, introduced himself, and obtained Defendant's basic information. He then gave Defendant a *Miranda* form and "made sure he understood his rights." Detective Southard had Defendant read each line on the form and asked Defendant to initial

---

1. All statutory references are to RSMo 2000.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

each line if he understood that particular right. Defendant did so and then signed the form. Detective Southard then interviewed Defendant; the entire interview was videotaped. During the interview, Defendant acknowledged that J.E. was pregnant with his child and seemed to believe he was at the police station to discuss child support and insurance for the child. At the end of the interview, Defendant was arrested.

Defendant was charged with second-degree child molestation, under section 566.068. On the morning of trial, Defendant filed a written motion to suppress; that motion was taken up on the record following voir dire but before opening statements. Defendant also filed that morning a motion to edit the videotape, which was taken up at the same time. In his written motion to suppress, Defendant primarily claimed that the videotaped interview was inadmissible because the waiver of his *Miranda* rights was not knowing and voluntary. Defendant also claimed, in a single sentence at the end of his motion, that Defendant's statements were also excludable because the interview was the result of an unlawful detention. At the hearing, however, Defendant—through counsel—stated in response to the trial judge's inquiry about Defendant's pending motions:

> [COUNSEL]: That is right, Judge. Our two motions *now* are that the tape makes it clear that [Defendant] did not make a knowing waiver of his Miranda rights. He thinks he's there to give an interview for purposes of Medicaid and child support. I think that the genuineness of his reaction is reflected on the video, so I'd ask that you watch the video.

(Emphasis added). Defendant then summarized his second motion regarding the editing of the videotape. The trial court watched the video and overruled Defendant's motion to suppress.

During Detective Southard's testimony, the State sought admission of the videotape of Defendant's confession into evidence and permission to play it to the jury. Defendant objected, saying, "Yes, Judge, we would object. We think that the Miranda waiver was not knowing and voluntary based on the evidence we showed the Court earlier in the prior suppression motion. We would restate *that* motion and ask the Court to exclude the video." (Emphasis added). The trial court overruled the objection, and the video was played for the jury.

The jury found Defendant guilty of second-degree child molestation and recommended that the trial court sentence him to a $1,000.00 fine. The trial court imposed the recommended sentence. Following the denial of Defendant's motion for new trial, in which Defendant, *inter alia*, challenged the admission of the videotaped confession because Defendant's waiver of his *Miranda* rights was not knowing and voluntary and was the fruit of an unlawful detention, this appeal timely followed.

### *Discussion*

Defendant raises two points on appeal, and we address them in the order presented.

### *Claim that Videotaped Interview was the Result of Unlawful Seizure Not Preserved*

In his first point, Defendant claims

> The court erred when it admitted [Defendant's] statements in State's Exhibit 3 (DVD of statements) because the statements were the fruit of an unlawful seizure of [Defendant] in violation of [Defendant's] rights under the Fourth Amendment of the United States Constitution and his rights under Article I,

Section 15, of the Missouri Constitution. Statements obtained as the result of an illegal seizure are suppressed, and the court erred when it refused to suppress the statements. [Defendant] was seized and detained, by officers of the City of Ozark, Missouri, without a warrant, probable cause for his arrest, or his consent and taken by the officers to the City's police station, where he was detained and interviewed by the officers and made incriminating statements about his sexual activities with 14 year old [J.E.].

This claim, however, was not preserved for appeal.

▆▆▆ In order to attack the validity of a search or seizure—and the admissibility of any fruits of that so-called "poisonous tree"—"the defendant must have filed a motion with the trial court to suppress the evidence." *State v. Anderson*, 698 S.W.2d 849, 851 (Mo. banc 1985). He or she "must have also kept the question alive by asserting timely and proper objections throughout the trial and by bringing it to the attention of the trial court in a motion for new trial." *Id.* "To preserve an objection to evidence for review, the objection must be specific, and the point raised on appeal must be based upon the same theory." *State v. Driver*, 912 S.W.2d 52, 54 (Mo. banc 1995).

▆▆▆ While Defendant's motion to suppress and motion for new trial contained the contention that Defendant's detention and transport to the police station was unlawful, Defendant raised only one specific ground in his objection to the admission of the videotaped interview at trial—the video was inadmissible because Defendant's waiver of his *Miranda* rights was not knowing and voluntary. During oral argument in this appeal, Defendant asserted that his passing reference to his motion to suppress in his objection was sufficient

to raise the illegality of his seizure because it was mentioned in that motion. We disagree. In the context of his earlier representation to the trial court that the only issue he was "now" challenging was the voluntariness of the waiver, the trial court and the State could have reasonably construed Defendant's objection as being limited only to "that" issue orally challenged by Defendant during the hearing on his motion to suppress. To construe Defendant's objection more broadly would sanction a defendant misleading the State and the trial court into believing that he had abandoned a claim in his motion to suppress so that the State does not present any evidence on it and the trial court does not rule upon it, only to be sandbagged by that defendant then raising that abandoned claim on appeal. The omission of any specific reference to the lawfulness of Defendant's detention in his objection at trial in the context of his earlier representation to the trial court limiting his claim to the validity of his *Miranda* waiver renders his first point on appeal unpreserved. Defendant does not request plain error review. We therefore decline to review the merits of Defendant's first point relied on, and we deny the same. *See State v. Campbell*, 122 S.W.3d 736, 740 (Mo.App. 2004) ("[A]n appellate court is not required to engage in plain error review[.]").

### Waiver of Rights was Knowing and Voluntary

In his second point, Defendant contends,

The court erred when it admitted [Defendant's] statements in State's Exhibit 3 (DVD of statements) because the statements were obtained in violation of his right against self incrimination under the Fifth Amendment of the United States Constitution and under Article I, Section 19, of the Missouri Constitution. Under *Miranda*, those rights can be

waived, but the waiver must be voluntary, knowing, and intelligent for it to be valid under the totality of the circumstances relating to the waiver. Under the totality of the circumstances of [Defendant's] waiver, his waiver was not voluntary, knowing, and intelligent because (1) [Defendant] made the waiver after he was illegally seized by the police in violation of his right against an unlawful seizure (no warrant, no probable cause, and no consent); (2) he never thought, nor was he informed, that he was seized or being interviewed in regard to a criminal matter until after he had signed the waiver and made incriminating statements; and (3) he believed he was seized to be interviewed about insurance and child support for his child by [J.E.].

We disagree.

Defendant's first argument regarding this point—Defendant's detention giving rise to the interview was unlawful—was not preserved for appellate review by proper specific objection as discussed *supra* in response to his first point relied on.

■■ As to Defendants' remaining contentions, in reviewing a challenge to a trial court's denial of a motion to suppress, "we will not reverse ... unless the decision was clearly erroneous, leaving this Court with a definite and firm impression that a mistake was made." *State v. Jackson,* 248 S.W.3d 117, 121 (Mo.App.2008) (citing *State v. Williams,* 97 S.W.3d 462, 469 (Mo. banc 2003); *State v. Newberry,* 157 S.W.3d 387, 397–98 (Mo.App.2005)). We are limited in our review "to determining whether the decision to deny the motion to suppress is supported by substantial evidence." *Jackson,* 248 S.W.3d at 121 (citing *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003)). In the course of our review, we consider the records of both the suppression hearing and the trial, *State v.*

*Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999), and we view the entirety of the record before us in the light most favorable to the trial court's ruling on the motion to suppress, *State v. Jackson,* 186 S.W.3d 873, 879 (Mo.App.2006). We thus consider only those facts—and the reasonable inferences that can be drawn therefrom—that are favorable to the trial court's ruling, *State v. Galazin,* 58 S.W.3d 500, 507 (Mo. banc 2001), and we disregard all contrary evidence and inferences, *State v. Kinkead,* 983 S.W.2d 518, 519 (Mo. banc 1998).

■ *Miranda* requires that,
> when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, ... [h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. at 478–79, 86 S.Ct. 1602. These rights can be waived, however.
> The [*Miranda*] waiver inquiry "has two distinct dimensions": waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

*Berghuis v. Thompkins,* —— U.S. ——, 130 S.Ct. 2250, 2260, 176 L.Ed.2d 1098 (2010) (quoting *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

■ Defendant appears to argue that he was unaware of the criminal consequences of his statements during the interview and, therefore, could not have

knowingly waived his rights. Defendant's argument on this point, however, misinterprets the pertinent "consequences" as outlined by the Court in *Miranda*. The *Miranda* rights do not attach to a specific criminal charge but rather to the individual, so as to encompass any potential statement that may be made during an interrogation; thus, the use of the word "anything" by the Court in *Miranda*. *See Miranda*, 384 U.S. at 469, 86 S.Ct. 1602 ("The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court."). To hold otherwise would render interrogations infinitely more complicated and investigations nearly impossible, limiting the police officer's scope of questioning to those crimes of which they are already aware. Moreover, the *Miranda* Court saw fit to discuss the purpose of articulating this particular warning to an individual:

> This warning is needed in order to make him aware not only of the privilege, but also of the *consequences of forgoing it.* It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest.

*Id.* (emphasis added). "The requirement that a waiver of rights be knowing and intelligent does not mean that a defendant must know and understand all of the possible consequences of the waiver." *State v. Powell,* 798 S.W.2d 709, 713 (Mo. banc 1990). " 'Rather, it requires that the defendant understood the warnings themselves;' that defendant at all times knew that he or she could stand silent, could request that an attorney be present during interrogation, and that the State could and would use any statement to obtain a conviction." *State v. Nunnery,* 129 S.W.3d 13, 18 (Mo.App.2004). The "showing that a 'defendant was informed of his rights, that he was capable of understanding those rights, and that no physical force, threats, promises, or coercive tactics were used to obtain the confession,' is prima facie evidence that the confession given while the defendant was in custody was voluntary." *State v. Johnson,* 988 S.W.2d 115, 120 (Mo. App.1999) (quoting *State v. Wilkinson,* 861 S.W.2d 746, 750 (Mo.App.1993)). That the individual is being investigated for a criminal matter should be implied from the issuance of one's *Miranda* rights, but is of no consequence to the voluntariness of the waiver.

Thus, Defendant must be shown, by a preponderance of the evidence, not to have been intimidated, coerced, or deceived, and to have understood both that he had the rights to remain silent and be represented by an attorney and that anything he said during the interview could be used against him. "A waiver is generally knowing and voluntary if the defendant understood the warnings—if the defendant knew he could remain silent, could request an attorney be present during the interrogation, and that the State could and would use any statement to obtain a conviction." *State v. Mateo,* 335 S.W.3d 529, 537 (Mo.App.2011). This is determined by examining "the facts and circumstances surrounding [the] case[,] and review is based on the totality of the circumstances, taking into account the background, experience and conduct of the accused." *State v. Bucklew,* 973 S.W.2d 83, 90 (Mo. banc 1998).

Here, the videotaped interview shows Defendant being handed a sheet of paper containing his *Miranda* rights after stating that he can read and write and informing Detective Southard that he has

completed his junior year of high school. Detective Southard instructed Defendant to read each of the rights on the sheet and to initial each one if he understood that particular right. Defendant then initialed beside each right listed on the paper. Thus, Defendant was informed of both his rights and the consequences of waiving them.

The videotape further shows that the atmosphere inside the interview room was calm and polite, both Defendant and Detective Southard remained seated throughout the interview, and neither so much as raised his voice toward the other. There is, thus, no indication that any force or coercion was used to compel Defendant's waiver or subsequent statements.

Furthermore, evidence was presented at trial indicating that Defendant was aware that his sexual relationship with J.E. was illegal well before he was interviewed and that Defendant had been in jail before. These facts, coupled with the fact that Defendant was informed of his rights prior to the start of the interview, should have placed Defendant on notice that speaking to Detective Southard regarding his sexual relationship with J.E. was contrary to his interests. Defendant cites no legal authority requiring that a defendant know the crime which is being investigated before waiving his rights and presents no other reviewable argument to that end. Defendant's second point is denied.

### Decision

The trial court's judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.