STATE of Missouri, Respondent,

v.

Michael CRITES, Appellant.

No. SD 31675.

Missouri Court of Appeals,
Southern District,
Division One.

April 30, 2013.

Rosalynn Koch, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.

## WILLIAM W. FRANCIS, JR., J.

Michael Crites ("Crites") appeals the trial court's judgment convicting him of the unclassified felony of forcible sodomy (Count I), in violation of section 566.060; the class A Felony of child kidnapping (Count V), in violation of section 565.115; and the unclassified felony of enticement of a child (Count VI), in violation of section 566.151.[1] Crites contends the trial court erred in denying his motion to suppress his statements and relying on his written statement to law enforcement in determining guilt. Finding no merit to Crites' claim, we affirm the judgment and sentence of the trial court.

### Factual and Procedural Background

Crites does not challenge the sufficiency of the evidence to support his conviction. Viewing the evidence in the light most favorable to the trial court's ruling, *State v. Taber*, 73 S.W.3d 699, 703 (Mo.App. W.D.2002), the record reveals that on July 15, 2009, Victim, a ten-year-old boy, was swimming with friends at a creek near his Springfield home. Crites was fishing in the creek at the same time. Victim testified he had seen Crites at the creek about five to ten times prior to that day. Victim's friends left before he did and when Victim began to leave, Crites stopped him. Crites told Victim he wanted to show him something, grabbed and tugged his arm, pulled him away, and led Victim along a trail.

Crites told Victim that he would let him go if he looked at a ditch that contained a car hood, a tire, and several pieces of scrap metal. Victim went down into the ditch and looked. Crites grabbed Victim's arm and tried to force him to the ground, telling him that a man was in the area and he needed to hide and get out of sight. When Victim tried to get up, Crites pushed his head to the ground. Crites pulled Victim's shorts down to his knees and then pulled down his own pants. Crites put his penis inside Victim's anus as he held Victim's head down with force to keep Victim from getting away. Victim yelled at Crites calling him a "child molester." Crites eventually got up, pulled up his pants, and ran off.

Victim ran home, arriving shortly before 7:00 p.m., and told his mother what had happened. The police were called to Victim's home, and Victim led them to the general area of the assault. Victim told the officers that Crites, whom he called "Mike," had thrown a clear beer bottle with a gold cap into the creek. A forty-ounce Miller Beer bottle matching that description was retrieved from the creek, and it was admitted into evidence at trial. Victim was taken to a hospital emergency room where a Sexual Assault Forensic Examination ("SAFE") was performed.

On July 16, 2009, Victim was interviewed at the Child Advocacy Center and a videotape of that interview was admitted into evidence. On the same day, Officer Eric Reece ("Officer Reece") was assigned to the case. Officer Reece worked in "the persons unit, specifically working crimes against children."

After being assigned to the case and reading the case file, Officer Reece contacted Victim's family and went to the area by the creek where the alleged incident took place. He found a red jacket with an insignia for the "LMS Intellibound Company" next to a drainage pipe. The jacket was similar to a jacket Victim had de-

1. All statutory references are to RSMo 2000, unless otherwise indicated.

scribed his assailant as wearing. Officer Reece showed the jacket to Victim, who recognized it as the jacket belonging to "Mike," the person that had assaulted him. Crites worked at LMS Intellibound in July 2009. The jacket was logged in as evidence and hair samples were obtained from it. The jacket was admitted into evidence at trial. Officer Reece used the company name on the jacket and Victim's description of a car driven by his assailant, to identify Crites as a suspect.

On July 17, 2009, after Crites was identified as a suspect in the assault, Officer Reece and four other officers went to Crites' home to make contact with him. Upon making contact, Crites voluntarily agreed to accompany the officers to the Springfield Police Department for questioning. Officer Reece began the videotaped interview by giving Crites the *Miranda*[2] warning, which Crites waived and signed the statement-of-rights form. Officer Reece talked to Crites for approximately two hours. Reece tried to elicit a response or confession from Crites using the "Reid method," on which Reece had been trained. Crites initially did not make any confessions and denied having touched Victim stating "he wouldn't hurt a ten-year-old kid." However, Crites eventually told Officer Reece that Victim had taken off his pants and squatted to go to the bathroom. Crites said that Victim fell as he squatted and he may have touched Victim as he reached out to help him up. Crites told Officer Reece that his hand touched Victim's bottom, but he denied putting either his finger or his penis inside Victim's anus. Crites also drafted a handwritten statement that read as follows:

> I got off about 3:00 Pm on wednesday The 15th and went down To the creek off of Scenic To think and talk To people I Talked To kids down there 4 adults and me and [Victim] was by are self so we went down To this Little trail by the creek and he went down by the water to swim and he came Back up and we sat by this tree he had to go to the Restroom so he Pulled down his pants or shorts and went to fall and he fell on his stomach with his shorts still down so I Touched him with my hand then I Asked my self what I was doing I can't do this I was scared and told myself I needed to Leave. every body but me and [Victim] left About 5:30 or so and I Left About between 6:00 pm & 6:30 Pm.[3]

Throughout the course of the interrogation, Crites never admitted to putting anything in Victim's anus, putting or inserting his penis in Victim's anus, or grabbing Victim's penis.

Crites was charged by "Felony Information" with the unclassified felony of forcible sodomy (Count I), for having deviate sexual intercourse with Victim, in violation of section 566.060; the unclassified felony of statutory sodomy in the first degree (Count II), for having deviate sexual intercourse with Victim, in violation of section 566.062; the unclassified felony of forcible sodomy (Count III), for placing his finger in Victim's anus, in violation of section 566.060; the unclassified felony of statutory sodomy in the first degree (Count IV), in violation of section 566.062; the class A Felony of child kidnapping (Count V), in violation of section 565.115; and the unclassified felony of enticement of a child (Count VI), in violation of section 566.151.

On January 27, 2010, Crites filed a "Motion to Suppress Statements" alleging that the "statements taken from [him] by law

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** We have shown Crites' handwritten statement as written without notations to grammatical or punctuation errors.

enforcement agents" were obtained "in violation of [his] rights against self-incrimination, right to counsel, and due process of law[.]" Crites further alleged that: (1) his statements were not voluntary due to the length and nature of his custody, and the nature, interrogation and conditions under which it was conducted; (2) the statements were not an accurate reflection and record of the conversation between Crites and law enforcement; (3) Crites was subjected to mental and physical duress prior to and during the interrogation; (4) Crites' request for legal counsel was ignored; (5) the statements were obtained prior to Crites' "presentation to a judicial officer"; (6) that the statements were made without Crites being advised of his constitutional rights; and (7) the statements were the result of an unlawful arrest.

On March 15, 2010, a motion hearing was scheduled but was continued to April 15, 2010. On April 15, the motion hearing was again continued and rescheduled to May 20, 2010, at which time the motion to suppress was "recessed until 6/29/2010." On June 29, 2010, Crites filed a "Waiver of Trial by Jury (Felony)" which was accepted by the trial court after sworn testimony. A bench trial and the motion to suppress were set for August 31, 2010.

Thereafter, numerous hearings, pre-trial conferences and trial dates were scheduled and rescheduled, but there was no further hearing or ruling on the motion to suppress until the bench trial held on June 29 and 30, 2011. On June 29, 2011, before the bench trial commenced, the following colloquy took place regarding the motion to suppress:

[STATE]: In addition, I've been looking over the Court docket, and it did not look like the defendant's motion to suppress statements, evidence, and ID had been ruled on or even heard, so I don't

know which portions of those need to be taken up.

[CRITES' COUNSEL]: I believe the statements had been taken up, from what I understand. The motion to suppress evidence—basically any of those objections that I have I think will be taken up during the trial, Your Honor. I don't think there's any need for a full-blown hearing on it, in any event.

THE COURT: But the same evidence will come out at the bench trial as would be at a motion to suppress, and I just need to rule on them when I rule on the guilt or innocence of your client.

The interview and statements of Crites came up during trial with the State's witness, Officer Reece. During questioning regarding Exhibit 10, the videotaped "Interview of Crites," the following colloquy took place regarding the motion to suppress:

[STATE]: Your Honor, at this time I'd move to admit State's Exhibit No. 10.

[CRITES' COUNSEL]: Your Honor, I'm going to renew the objections made during the motion to suppress statements based on the fact that the statements given were involuntary, and [Crites] was not fully aware and did not fully understand his rights at the time before he made those statements.

THE COURT: I'll note your objection. I'll have to look at—or watch the video before I rule on the motion to suppress the statement as to whether it met the Constitutional standards, and I'll show your objection continuing throughout the video.

[CRITES' COUNSEL]: Thank you, Your Honor.

. . . .

[STATE]: Your Honor, at this time I'd move to publish the interview of [Crites].

THE COURT: Okay.

[STATE]: Which, for the record, is State's Exhibit 10.

THE COURT: Still the same objection on the motion to suppress?

[CRITES' COUNSEL]: That's correct, Your Honor.

State's Exhibit 10 was played, but not recorded.

During the State's direct examination of Officer Reece regarding Exhibit 13, Crites' handwritten statement, the following colloquy took place regarding the motion to suppress:

[STATE]: Your Honor, at this time I'd move to admit State's Exhibit 13.

[CRITES' COUNSEL]: No objection, Your Honor.

THE COURT: Admitted.

You don't mean any other objection other than what you've posed in the motion to suppress?

[CRITES' COUNSEL]: That's correct.

THE COURT: Okay.

There was no further mention or rulings with regard to Crites' motion to suppress. Officer Reece went on to testify as to his training in interrogating suspects.

Officer Reece testified he had 40 hours of training in the "Reid method." He admitted in his interview of Crites he used "techniques to play on his emotions," brought up Crites' "past in regards to his abuse by his father," and talked about the incident as Crites "making a mistake versus him doing this on purpose" to elicit some type of response from Crites. Officer Reece testified these techniques were used as they were effective in getting people to "open up and talk." His statements to Crites regarding DNA and other physical evidence were an attempt to elicit a response from Crites and were still a "pos-sibility" and "still an option" even though Crites' clothing had been washed.

Officer Reece testified that even though Crites was not "say[ing] much," he kept talking to Crites regarding various things as it was one of the interview techniques. Crites did not make eye contact, stared at the floor, and made no response at all. However, on a couple of occasions, Crites showed some "emotional responses" such as "tearing up" and "coughing," which were emotional cues that Crites was "thinking and internally . . . struggling what to say[.]" Although Crites did at times indicate he had not done this, he did not exhibit any "strong denials" such as "pounding the table, throwing stuff, standing up, and being angry." Later in the interview, Crites did start talking about touching Victim and demonstrated how he touched Victim's arm.

On cross-examination, Officer Reece testified he did not ask Crites whether he had committed the assault, but rather stated to Crites that he did, as again this was an interrogation technique. He also admitted that by talking about the DNA evidence, it was "kind of a little form of deception in order to elicit a confession[.]"

Victim testified in detail, as described above, as to his assault by Crites. Victim identified Crites as the man who committed these acts against him on July 15, 2009.

Several other witnesses testified, including Crites. Crites testified he was fishing at the creek from about 2:15 in the afternoon until shortly after 4:00 p.m. Crites said that when he left, Victim and his two friends were at the creek, as were two adults. Crites said that he never spoke to Victim that day. Crites testified that after he left, he picked up his fiancé, took her to the store, and spent the rest of the evening at home. Crites testified his oral and written statements to the police about his con-

tact with Victim on that day were not true and he made those statements to Reece because he was "badgered" into saying he did something to Victim and felt he had no other choice.

The trial court took the case under advisement at the conclusion of the evidence. On August 8, 2011, by docket entry, the trial court found Crites guilty of Count I, forcible sodomy; Count V, child kidnapping; and Count VI, felony enticement of a child. The trial court acquitted Crites on Count III, forcible sodomy for placing his finger in Victim's anus, and Count IV, statutory sodomy in the first degree. The trial court dismissed Count II, an alternative count. The trial court's docket entry read:

> On June 29, 2011 and June 30, 2011, this Court conducted a bench trial in which testimony was presented on 6 counts filed against the defendant. Counts II and IV were alternative counts to the other 4 counts. The victim and police officers testified for the State. The State also introduced a statement given by the defendant. The victim clearly identified the defendant in the courtroom as the assailant since the victim had seen the defendant at the creek a few times. The defendant had forced the victim from the creek by grabbing his arm after both had left the creek. The victim stated the defendant had placed the defendant's penis in the anus of the victim and had touched the victim's anus with the defendant's hand. The victim never stated the defendant's finger went into the anus of the victim.

> I have reviewed my notes and have decided that there was not enough evidence to find that the defendant penetrated the victim's anus with his finger. Therefore, the Court does find the defendant not guilty of Counts III and IV.

The Court does find that the State has proven the defendant guilty beyond a reasonable doubt on counts I, V, and VI and finds the defendant guilty of those counts. Count II is dismissed.

On October 21, 2011, the trial court sentenced Crites to life without parole for forcible sodomy, to be served consecutively to the concurrent sentences of ten years each for child kidnapping and enticement of a child. On October 24, 2011, the trial court filed its "Judgment." This appeal followed.

Crites' sole point relied on contends the trial court erred in denying Crites' motion to suppress his statements and relying upon his written statement to Officer Reece in determining guilt because his statements were not voluntary or intelligent in that the statements were a response to coercive and emotionally abusive tactics. The issue presented for our determination is whether the trial court denied Crites' motion to suppress and if so, if the trial court clearly erred in denying that motion.

## Standard of Review

A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). We will not reverse unless we are left with a definite and firm impression that a mistake was made. *State v. Jackson*, 248 S.W.3d 117, 121 (Mo.App. S.D.2008) (internal quotations and citations omitted). "This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Sund*, 215 S.W.3d at 723 (internal citation omitted). "We thus consider only those facts—and the reasonable inferences that can be drawn therefrom—that are favorable to the trial court's rul-

ing, and we disregard all contrary evidence and inferences[.]" *State v. Ruff,* 360 S.W.3d 880, 885 (Mo.App. S.D.2012) (internal citation omitted). "Factual issues on motions to suppress are mixed questions of law and fact[,]" and we review questions of law *de novo. State v. Werner,* 9 S.W.3d 590, 595 (Mo. banc 2000).

### Analysis

■ Crites claims that "[g]iven the nature of the interrogation, along with [his] background and intellectual limitations, the conditions of the interrogation were inherently coercive such that [he] did not knowingly and intelligently waive his right to remain silent or his right to counsel."[4] "'The test for voluntariness is whether, under the totality of the circumstances, the defendant was deprived of free choice to admit, to deny, or to refuse to answer and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed.'" *Jackson,* 248 S.W.3d at 123 (quoting *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998)).

First, we note that it is unclear from the record whether the trial court ever actually overruled the motion to suppress. The trial court only made one reference to Crites' statements in the verdict: "[t]he State also introduced a statement given by [Crites]." However, even if the trial court overruled the motion to suppress, such a ruling is not error entitling Crites to relief for the following reasons.

### Presumption in Judge–Tried Case

■ "'[I]n a judge-tried case, we presume that the trial judge was not prejudiced by inadmissible evidence and was not influenced by it in reaching a judgment, unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence.'" *State v. Bewley,* 68 S.W.3d 613, 619 (Mo.App. S.D.2002) (quoting *State v. Anders,* 975 S.W.2d 462, 466 (Mo.App. W.D.1998)).

■ The reasoning for this presumption can be found in *State v. Sladek:*

'In a jury-waived case a certain amount of latitude in the admission of evidence is allowed, and even where an error is made in the admission of some evidence, except where the trial court relied on that evidence in arriving at its findings of fact and conclusions of law, such error is ordinarily held to be non-prejudicial. This is so because the rules of exclusion in the law of evidence as applied in a court of law are largely as a result of the jury system … when an action is to the court sitting without a jury, the rules of exclusion are less strictly enforced.'

835 S.W.2d 308, 313 (Mo. banc 1992) (quoting *State v. Leigh,* 580 S.W.2d 536, 545 (Mo.App. E.D.1979), *reversed on other grounds by Leigh v. State,* 639 S.W.2d 406 (Mo.App. E.D.1982)).

---

4. Crites notes the trial court did not make an initial finding that his statement was voluntary, but rather indicated "its intention to rule upon all motions at the time it determined [the] question of guilt." Crites goes on to suggest the preferable procedure "would have been to issue a specific finding as set forth in [*State v. Taylor,* 999 S.W.2d 744 (Mo.App. W.D.1999)]." His position on appeal is in contrast to his position on the first morning of trial. In fact, prior to starting the trial on the first morning, the State's attorney brought to the trial court's attention that Crites' motion to suppress had not been ruled on or heard. Crites' counsel responded that any of his objections will be taken up during the trial and he did not "think there's any need for a full-blown hearing on it, in any event." The trial court then noted that because the matter was a bench trial, the same evidence would come out at the bench trial as a motion to suppress hearing. Clearly, Crites' counsel agreed to the procedure the trial court ultimately followed.

When the admissibility of Crites' statements came up during the trial, a procedure to which Crites agreed to, the trial court responded as follows:

> THE COURT: I'll note your objection. I'll have to look at—or watch the video before I rule on the motion to suppress the statement as to whether it met the Constitutional standards, and I'll show your objection continuing throughout the video.

As previously noted, the only mention of Crites' statements in the verdict was that the State also "introduced" a statement given by Crites.

■ Here, there is no clear and obvious evidence of reliance on Crites' statements made by the trial court in reaching its decision. *See State v. Ernst*, 164 S.W.3d 70, 74–75 (Mo.App. S.D.2005). Nothing in the record shows the trial court relied upon Crites' statements, nor has Crites shown that his statements played a critical role in the trial court's decision. *See id.* (finding appellant had not shown that the inadmissible evidence played a critical role in the trial court's decision). See also *State v. Love*, 134 S.W.3d 719, 725 (Mo. App. S.D.2004) (admission of evidence was not error when no showing was made that evidence played a critical role in the trial court's finding of guilt).

In stating its judgment the trial court, in a decisive manner, set out the facts in accordance with the Victim's testimony:

> The victim and police officers testified for the State. The victim clearly identified the defendant in the courtroom as the assailant since the victim had seen the defendant at the creek a few times. The defendant had forced the victim from the creek by grabbing his arm after both had left the creek. The victim stated the defendant had placed the defendant's penis in the anus of the victim and had touched the victim's anus

with the defendant's hand. The victim never stated the defendant's finger went into the anus of the victim.

Because there is nothing in the record indicating that the trial court relied upon Crites' statements in reaching a verdict, "we will presume the trial [court], as the trier of fact, was not prejudiced by any [potentially] inadmissible evidence and was not influenced by such evidence in reaching [a] decision." *State v. Clay*, 909 S.W.2d 711, 716 (Mo.App. W.D.1995).

### Harmless Error

■ Even assuming it was error to admit Crites' statements, that error would at most constitute harmless error in light of the overwhelming evidence supporting Crites' convictions. As already noted, there is no indication the trial court relied on Crites' statements in reaching a verdict.

The admission of Crites' statements, if determined to be erroneous, is harmless error because his statements were inconsistent with the trial court's findings. Crites did not admit that he forced the Victim from the creek by dragging him into the woods, or that he placed his penis in Victim's anus. The only act that Crites verbally admitted to was that he may have touched Victim after Victim fell and Crites reached out to help him up. Crites told Officer Reece that his hand touched Victim's bottom, but he denied putting either his finger or his penis inside Victim's anus. In his written statement, Crites only admitted to walking to a little trail by the creek with Victim and that he touched Victim with his hand when he fell trying to go the restroom.

The trial court found Crites guilty of Count I, forcible sodomy; Count V, child kidnapping; and Count VI, felony enticement of a child. At no point in his verbal or written statements did Crites confess to

elements of forcible sodomy, child kidnapping and/or felony enticement of a child, the actual crimes for which he was convicted. For that reason, admission of Crites' statements, if error, was harmless error.

After reviewing the record, we do not find the trial court's ruling to be clearly erroneous. Accordingly, Crites' sole point relied on is denied and the judgment of the trial court is affirmed.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.