

# Missouri Court of Appeals
## Southern District

### In Division

CROWIN KING,                                )
                                            )
    Movant-Appellant,                   )
                                            )
v.                                          )    No. SD37871
                                            )    Filed: January 23, 2024
STATE OF MISSOURI,                          )
                                            )
    Respondent-Respondent.              )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Circuit Judge

### AFFIRMED

Crowin King (King) appeals from an order denying his amended Rule 29.15 motion to set aside his convictions for second-degree murder and armed criminal action (ACA). *See* § 565.021; § 571.015.[1] King's post-conviction motion presented two claims of ineffective assistance of counsel: (1) that trial counsel failed to call a certain expert witness; and (2) that trial counsel failed to object to a line of testimony on the grounds that it was evidence of King's prior uncharged misconduct. King's two points on appeal contend that the motion

---

[1] All rule references are to Missouri Court Rules (2020). References to § 565.021 are to RSMo Noncum. Supp. (2014); references to § 571.015 are to RSMo (2000). This Court has independently verified the timeliness of King's original and amended post-conviction motions. *See* ***Moore v. State***, 458 S.W.3d 822, 825-26 (Mo. banc 2015); ***Haffly v. State***, 651 S.W.3d 893, 894 n.2 (Mo. App. 2022).

court clearly erred in denying each of these claims. Because the motion court's decision to deny relief after an evidentiary hearing was not clearly erroneous, we affirm.

King bore the burden of proving the grounds asserted in his post-conviction motion by a preponderance of the evidence. Rule 29.15(i); *see* **McLaughlin v. State**, 378 S.W.3d 328, 337 (Mo. banc 2012). Our review of the denial of a Rule 29.15 motion is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); **Shockley v. State**, 579 S.W.3d 881, 892 (Mo. banc 2019). We will find clear error only if a full review of the record leaves us with a definite and firm impression that a mistake has been made. **Shockley**, 579 S.W.3d at 892. We presume the motion court's findings and conclusions are correct. **Id**. Further, "this Court defers to the motion court's determination of credibility." **Smith v. State**, 413 S.W.3d 709, 715 (Mo. App. 2013). The following summary of facts has been prepared in accordance with these principles.

**Factual and Procedural Background**

Carolletta Hamilton (Victim) was shot and killed in her apartment in Kennett, Missouri, sometime in the early morning hours of October 10, 2015. Police discovered her body on October 11th, after being dispatched on a well-being check. Victim had been in a romantic relationship with King until July of that year, but by October, King was living with his new girlfriend, Tenika Covington (Covington), in a neighboring town. Police arrested King the day after Victim's body was found.

King was charged with first-degree murder and ACA. He agreed to waive his right to a jury trial in exchange for the State withdrawing its notice of intent to seek the death penalty. At the bench trial, Covington testified that King left their home around 4:00 p.m. on the afternoon before Victim's murder and returned around 1:00 a.m. Covington said she

2

and King then got into an argument, after which he told her that he had killed Victim. King told her he shot Victim because Victim knew about a robbery he had committed. King testified later in the trial and denied that he told Covington that he killed Victim. He asserted that Covington and her friend, Fred Tillman (Tillman), had colluded to frame him for Victim's murder.

The trial court found King guilty of the lesser-included offense of murder in the second degree and ACA. King was sentenced to prison terms of 30 years on the murder charge and 20 years on the ACA charge, with the sentences to run consecutively. After King appealed the trial court's judgment, this Court affirmed his conviction in an unpublished order and statement, ***State v. King***, SD36427 (Mo. App. filed October 23, 2020).

King filed a motion for post-conviction relief under Rule 29.15, and counsel later filed an amended motion. King raised two claims of ineffective assistance, that his trial counsel: (1) failed to call a certain expert witness; and (2) failed to object to a line of testimony on the grounds that it was evidence of King's prior uncharged misconduct. The motion court held an evidentiary hearing on King's motion, at which King and his trial counsel testified.[2] The motion court ultimately denied King's motion, finding that King's trial counsel was not constitutionally ineffective. This appeal followed. Additional facts relevant to each point on appeal are included below.

## Discussion and Decision

Both of King's points contend that the motion court clearly erred in denying his claims of ineffective assistance of counsel. To prevail on a claim of ineffective assistance

---

[2] King was represented at trial by David Kenyon and Charles Hoskins. Hoskins died before King's post-conviction proceedings, and only Kenyon testified at the evidentiary hearing. Any references below to "trial counsel" with regard to the evidentiary hearing will thus only refer to Kenyon.

3

of counsel, a movant must show that counsel's performance was deficient and that the movant was prejudiced thereby. **Strickland v. Washington**, 466 U.S. 668, 687 (1984). The deficiency prong requires a movant to "show trial counsel failed to exercise the level of skill, care, and diligence practiced by a reasonably competent attorney in a similar situation[.]" **Staten v. State**, 624 S.W.3d 748, 750 (Mo. banc 2021). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[,]" and a movant must show that the challenged action should not be considered "sound trial strategy." **Strickland**, 466 U.S. at 689-90 (citation omitted). The prejudice prong requires a movant to show a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors. **Hounihan v. State**, 592 S.W.3d 343, 347 (Mo. banc 2019). "A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome." **Tisius v. State**, 519 S.W.3d 413, 420 (Mo. banc 2017); **Hounihan**, 592 S.W.3d at 347.

*Point 1*

While preparing for trial, King's trial counsel spoke with a digital forensic expert. The expert was an employee of the Missouri State Public Defender, who had analyzed evidence from cell phones belonging to King and Covington. According to trial counsel, the expert had uncovered evidence in Covington's phone showing that Covington had been in Kennett in the days after Victim's murder, even though she had previously claimed not to be. However, trial counsel ultimately did not call the expert to testify at the trial. In his amended motion for post-conviction relief, movant asserted that trial counsel's decision to not call the expert constituted ineffective assistance of counsel.

At the evidentiary hearing, trial counsel testified that he did not call the expert to testify because of other evidence the expert had found on King's phone. Trial counsel

4

explained: "[The expert] found a number of things on – in [King's] cell phone data that I believed would have damaged him at trial. And I was concerned that if we put him on the stand that he might be asked about that on cross examination." According to trial counsel, the expert discovered that the location information on King's phone had been manually turned off shortly before the crime was committed and had not been turned back on until the next morning. The expert also found a message from Victim to King several days before her death indicating that she was pregnant with King's child. Trial counsel testified that, although he knew the State had only done a "cursory kind of search and sweep" of King's phone, and therefore, may not have known about the potentially damaging evidence found by the expert, he was still concerned that the prosecutor could elicit the evidence with open-ended questions on cross-examination. Ultimately, trial counsel determined that there was "potentially harmful information that would have outweighed any benefit in calling [the expert]." The motion court denied King's claim of ineffective assistance of counsel, explaining that the "testimony of [trial counsel] evidences that his decision not to call the witness was sound trial strategy."

On appeal, King asserts that the motion court's judgment was clearly erroneous. He argues that the expert's testimony would have supported his defense that Covington and Tillman "colluded to frame him." King rejects trial counsel's justification for not calling the expert and claims that the State would have had no reason to ask the expert about the contents of King's phone because the State's own investigation of King's phone would not have revealed the potentially damaging evidence.

To demonstrate ineffective assistance of counsel "for failure to locate and call an expert witness, the movant must show that: (1) such an expert witness existed at the time of trial; (2) the expert witness could be located through reasonable investigation; and (3) the

5

expert witness's testimony would have benefited the defense." ***Zink v. State***, 278 S.W.3d 170, 179 (Mo. banc 2009). The selection of expert witnesses by trial counsel is generally a question of trial strategy and is "virtually unchallengeable" in an ineffective-assistance claim. ***Strickland***, 466 U.S. at 690; ***Davis v. State***, 486 S.W.3d 898, 906 (Mo. banc 2016). "No matter how ill-fated it may appear in hindsight, a reasonable choice of trial strategy cannot serve as a basis for a claim of ineffective assistance." ***Johnson v. State***, 388 S.W.3d 159, 165 (Mo. banc 2012).

Missouri courts have held there is no ineffective assistance of counsel where counsel chooses not to call an expert witness that counsel reasonably determined could do more harm than good for their client's defense. In ***Collings v. State***, 543 S.W.3d 1 (Mo. banc 2018), defense counsel, during a death penalty trial, decided not to call an expert psychiatrist to present mitigation testimony about the defendant's history of addiction. ***Id***. at 12. The Court held that there was no ineffective assistance where defense counsel "made a strategic decision not to focus on evidence of [the defendant's] drug and alcohol use as they believed such evidence and argument would antagonize the jury." ***Id***. at 13. In another case, defense counsel declined to call a blood-spatter expert in a murder trial because they were concerned that the expert's testimony could be inconsistent with the defendant's own explanation of how blood got onto his clothing. ***Barton v. State***, 432 S.W.3d 741, 755 (Mo. banc 2014). Defense counsel also worried that calling their own expert could support the State's blood-spatter expert, whose credibility they planned to impeach. ***Id***. The Court held that there was no ineffective assistance because the motion court found that defense counsel had "made a reasonable determination that an expert would do more harm than good." ***Id***. at 756. King's trial counsel faced a similar dilemma – whether to call an expert witness that could both benefit and harm King's defense. After thorough investigation and consideration, trial

6

counsel came to the rational conclusion that the risk of harm in calling the expert was too great, and his decision not to call the expert was therefore a reasonable choice of trial strategy.

King argues that trial counsel's concerns about potentially damaging cross-examination of the expert were unfounded because the State "had done their own forensic analysis of [King's phone] and failed to find the damaging evidence." However, the record does not show that trial counsel would have been certain at the time of trial that the State did not know about the cell phone evidence. When asked at the evidentiary hearing whether the State would have known to ask the expert about King's phone records, trial counsel stated, "I don't recall" and "[t]hey might not have known about it." Even if the State had not discovered the damaging information on King's phone, it may have found that information, or at least gained a suspicion that the information existed, from other sources of evidence. And as trial counsel explained, there was a possibility that the expert would have testified about the phone evidence in response to open-ended questioning from the prosecutor. Thus, we cannot conclude that trial counsel's concerns about the expert's testimony were unreasonable.

Additionally, King has failed to show a reasonable probability that the outcome of his trial would have been different had trial counsel called the expert to testify. Even if the expert had provided evidence that Covington was in Kennett to see Tillman, the expert's testimony would not have proven any nefarious collusion between the two, and King's claim that Covington and Tillman framed him for Victim's murder would still be entirely speculative. The expert's testimony would also not have refuted Covington's testimony that King told her he killed Victim. King therefore has not shown prejudice sufficient to justify post-conviction relief. Point 1 is denied.

*Point 2*

During the State's examination of Covington at trial, the prosecutor asked her if she had ever seen King with a gun. Covington stated that she had seen King with a gun twice. When the prosecutor asked Covington for more details, defense counsel objected, arguing that the testimony was not relevant. The trial court instructed the prosecutor to end this line of questioning, although the court stated the prosecutor could be allowed to return to the issue if it became relevant after other testimony. Later during Covington's testimony, the following exchange occurred:

[Prosecutor]: Were you scared of the Defendant?

[Covington]: Yes, sir.

[Prosecutor]: And why is that?

[Covington]: When he put the gun in my mouth I was terrified by him.

[Prosecutor]: Okay. And at the time this happened he had just confessed to murder to you. Correct?

[Covington]: He told me – he put the gun in my mouth in August.

[Defense Counsel]: Excuse me. I'm going to object to this, Judge. This goes over matters that we discussed that are irrelevant.

[Court]: What I am trying to determine is when this happened. So if you could just tell me when the event is.

[Prosecutor]: I'm sorry, Judge. This isn't really the testimony that I'm attempting to elicit.

[Court]: Why don't you maybe just rephrase?

[Prosecutor]: Yes.

[Court]: Thank you.

No other mention of King putting a gun in Covington's mouth was made during the trial.

On direct appeal, King claimed that the trial court abused its discretion in admitting Covington's testimony that King put a gun in her mouth. He argued that the testimony constituted impermissible evidence of prior uncharged misconduct. In an unpublished statement, this Court determined that King's claim was not preserved because defense counsel had only objected on the grounds of relevance. We held that King had failed to facially demonstrate manifest injustice or a miscarriage of justice and declined plain error review.

In King's amended motion for post-conviction relief, he asserted that trial counsel was ineffective for failing to object to Covington's testimony "on the basis that the testimony was irrelevant and prejudicial evidence of uncharged misconduct." At the evidentiary hearing, trial counsel recalled that Covington was a "difficult witness" for all parties and that her testimony about King putting a gun in her mouth was not intentionally elicited by the prosecutor. Trial counsel stated that he had "no good reason" for not using prior uncharged misconduct as a basis for his objection to Covington's testimony.

The motion court denied King's claim of ineffective assistance of counsel because it found "a lack of evidence of sufficient prejudice to support [King's] claim[.]" The court reasoned that Covington's statement that King "had put a gun in her mouth in the past provides no connection with any activity that [King] may have taken with regard to the murder victim." On appeal, King argues that the motion court clearly erred in denying this claim.

We first address the State's argument that King's claim is not cognizable in a post-conviction proceeding. Although it is true, as the State asserts, that an issue decided on direct appeal cannot be relitigated in a post-conviction proceeding on a theory of ineffective assistance of counsel, "denial of a plain error claim is not dispositive of the question whether

9

counsel was ineffective in failing to preserve the issue as to which plain error was not found." ***Deck v. State***, 68 S.W.3d 418, 428 (Mo. banc 2002). The standards of review for plain error and ineffective assistance of counsel are not the same, and a court may grant post-conviction relief despite a ruling of no plain error on direct appeal. ***Id***.

To determine whether a claim of ineffective assistance for failing to preserve an error for appeal is cognizable, we must examine how the Court decided the movant's plain error claim on direct appeal. In ***Shifkowski v. State***, 136 S.W.3d 588 (Mo. App. 2004), we identified five ways an appellate court can resolve an unpreserved error on direct appeal:

1. The court may simply decline to exercise its discretionary authority to review the point for plain error.

2. The court may conduct plain error review and conclude that no error occurred at all.

3. The court may conduct plain error review and conclude that an error occurred, but it was harmless and caused no prejudice to the appellant.

4. The court may conduct plain error review and conclude that a prejudicial error occurred, but deny relief because the prejudice to appellant does not rise to the level of a manifest injustice or miscarriage of justice.

5. The court may conduct plain error review and grant relief because the error caused a manifest injustice or miscarriage of justice to occur.

***Id***. at 590-91 (internal citations omitted). This Court stated in ***Shifkowski*** that "plain error rulings falling within the *fourth* category of cases listed above *can* be relitigated in connection with an ineffective assistance of counsel claim presented in a post-conviction proceeding." ***Id***. at 591 (emphasis added). From this rule, the State infers that plain error rulings in the *first*, *second* and *third* categories *cannot* be relitigated in a post-conviction

10

proceeding. However, that inference is incorrect with respect to cases, like this one, that fall within the first category.[3]

In first-category cases, the issues relevant to an ineffective-assistance analysis under *Strickland* are not necessarily decided. When an appellate court declines plain error review, it makes no ruling as to whether the trial court erred or whether the alleged error was prejudicial. The State ignores cases where, after the Court declined plain error review on direct appeal, a post-conviction appeal relating to counsel's failure to object was given review. For example, in ***Rogers v. State***, 265 S.W.3d 853 (Mo. App. 2008), this Court considered the appeal of a post-conviction movant who argued his trial counsel was ineffective for failing to object to evidence that the movant alleged was illegally seized. *Id*. at 854-55. The movant had previously argued on direct appeal that the trial court erred in admitting the evidence, but this Court declined plain error review. *Id*. at 857 On movant's post-conviction appeal, we held that "[m]ovant is entitled to a determination in this case of whether there is a reasonable probability that the result in movant's criminal case would have been different had his trial counsel objected to the evidence[.]" *Id*. Likewise, King is entitled to a determination as to whether his trial would have had a different outcome had his trial counsel objected to Covington's testimony on the basis of prior uncharged misconduct.

---

[3] In cases that fall within the second and third categories, Courts have held that plain error rulings cannot be relitigated for different reasons. In category-two cases, where an appellate court on direct appeal has already determined that there was no error by the trial court, there would have been no objection that counsel was required to make. *See* ***Cornelious v. State***, 351 S.W.3d 36, 42-43 (Mo. App. 2011). In category-three cases, relitigation of plain error claims would presumably not be permitted, as there would not be sufficient prejudice to satisfy the second ***Strickland*** prong.

Although King's claim of ineffective assistance of counsel is cognizable, he has failed to make the required showing of prejudice under *Strickland*. Even if trial counsel had properly objected to Covington's testimony that King put a gun in her mouth, and even if the trial court had sustained the objection, there is no reasonable probability that the result of the trial would have been different. In a court-tried case, we presume that the trial judge was not prejudiced by inadmissible evidence unless the record clearly shows that the trial judge considered and relied upon the inadmissible evidence. *State v. Crites*, 400 S.W.3d 828, 834 (Mo. App. 2013). The record in the case at bar shows no such reliance. After Covington testified that King put a gun in her mouth, the judge told the prosecutor to rephrase his question. And during his pronouncement of the verdict, the judge made only a general statement that he had "fully and carefully considered the testimony presented in the bench trial of this cause and ha[d] also considered each exhibit admitted into evidence and relevant case law." King's argument that the court "did not deny that it relied on this evidence" misstates the relevant standard. Instead, there must be a "clear and obvious statement of reliance" on the challenged testimony by the trial court. *State v. Ernst*, 164 S.W.3d 70, 75 (Mo. App. 2005). Because the record contains no such clear and obvious statement of reliance, we cannot conclude that the testimony at issue affected the outcome of the trial. Therefore, King has failed to satisfy the prejudice requirement for ineffective assistance of counsel under *Strickland*. Point 2 is denied.

The judgment of the motion court is affirmed.

JEFFREY W. BATES, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCUR

BECKY J.W. BORTHWICK, J. – CONCUR

12